IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| Plaintiff, | : | NO. 10-703 |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| JUROR NUMBER ONE, | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    DECEMBER 21, 2011

I.    **INTRODUCTION**

The issue before the Court involves juror misconduct by
unauthorized use of e-mails during deliberations in a criminal
trial. After being dismissed, Juror Number One disobeyed the
Court's orders and discussed via e-mail with other jurors her
opinion on the Defendant's guilt. Juror Number One's conduct led
to the dismissal of another juror on the panel and had the
potential to lead to a mistrial. On December 16, 2011, the Court
found Juror Number One guilty beyond a reasonable doubt of

criminal contempt for juror misconduct and sentenced her to a fine of $1,000. This Memorandum is an expanded version of the sentence delivered by the Court from the bench.

## II.   BACKGROUND[1]

On June 2, 2011, Juror Number One was selected for jury service in the above captioned criminal trial, as a member of a twelve-person jury with two alternates. When the jury, in the above captioned case, was empaneled, the Court provided general instructions, including:

> Now, a few important words about your conduct as jurors in the case. First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss the case with you. Until you retire to the jury room at the end of the case to deliberate, you simply are not to talk about the case. . . . Of [sic] anyone tries to talk to you about the case, bring it to my attention immediately. . . . I instruct you that until the trial is concluded an [sic] you have heard all the evidence and retired to the jury room, you are not to discuss the case with anyone. There are good reasons for this ban in discussion . . . . I know many of you use cell phones, . . . to access the internet and to communicate with others. You must also not talk to anyone about the case or [use] these tools to communicate electronically with anyone about the case . . . or use these devices to communicate electronically by messages, . . . including e-mails . . . . This is extremely important, particularly in this era of electronic communication, it is extremely important

---

[1] The facts of this case have been stipulated to by the parties and in this Memorandum they constitute the Court's findings of fact and conclusions of law.

that you follow this direction not to communicate in
that manner . . . .

Trial Tr. 5:23-7:18, June 2, 2011.

Each time the jury recessed the Court instructed them,

"[d]o not discuss the matter among yourselves or with anyone."

See, e.g., Trial Tr. 60:17-18, June 3, 2011.

Upon her request, on the second to last day of trial,

for reasons associated with her employment, and with no

objections of the parties, the Court dismissed Juror Number One

and replaced her with the first alternate on June 7, 2011. Trial

Tr. 269:21-270:7, June 7, 2011. At the time she was dismissed,

and in open court, the Court instructed her individually:

> The only thing I want to instruct, as you know, the
> case has not yet been completed, so please do not
> discuss the case until it is completed. [The Deputy
> Clerk] will give you a call and let you know how
> things turn out and at that point you will be free to
> discuss the case and your experience, if you want to.
> If you don't want to, you don't have to discuss it
> with anybody. It would be entirely up to you, but
> don't do that until the matter is complete.

Id. at 270:7-16.

On June 7, 2011, the night she was dismissed, Juror

Number One sent an e-mail to Juror Number Eight and Juror Number

Nine, jurors that were still on the panel, stating:

> Dear [Juror Number Eight] and [Juror Number Nine]: It
> was great meeting you and working with you these past
> few days. If I was so fortunate as to have finished

the jury assignment, I would have found [Defendant]
guilty on all 4 counts based on the facts as I heard
them. There was a lot of speculation and innuendo, but
that is the case as I saw it. How wonderful it would
have been to see how others saw it. Please fill me in
as you can. . . . I feel like I was robbed. After four
days, I should have been able to contribute in some
way. . . . I want to wish you and the rest of the
jurors very clear thinking and the will to do the
right thing. Respectfully, [Juror Number One].

Trial Chambers Conference Tr. 14:18-15:24, June 8, 2011.

Juror Number Eight responded "Thank you for sharing
your thoughts. I am of the same mind and have great doubt that
the defense can produce anything new today that will change my
thinking. It disturbs me greatly to know that people lie . . . .
Anyway I will share your message with the gang." Id. at 16:2-
11.[2] The Court conducted voir dire of Juror Number Eight. Upon
Defendant's motion and without objection from the Government,
the Court dismissed Juror Number Eight from the jury and she was
replaced by the second alternate. Trial Tr. 14:18-15:24, June 8,
2011.

The Court also engaged in voir dire of Juror Number
Nine. She stated that she had not seen an e-mail from Juror
Number One.

---

[2] The existence of this communication was disclosed by Juror
Number Eight during the course of individual voir dire of jurors
on a completely unrelated matter to the present matter. But for
this coincidence, Juror Number One's communication may never
have been discovered.

Trial Chambers Conference Tr. 24:18-25:1, June 8, 2011. Upon

agreement of the parties, Juror Number Nine remained on the

jury. During deliberations, the Court ordered her cell phone to

be held in the Court's custody until the end of trial on June 9,

2011.[3] Trial Tr. 24:6-8, June 9, 2011.

On June 30, 2011, this Court referred the matter of

prosecuting Juror Number One for contempt to the United States

Attorney for the Eastern District of Pennsylvania for violation

of 18 U.S.C. § 401. ECF No. 90. In relevant part, section 401

states: "A court of the United States shall have power to punish

by fine or imprisonment, at its discretion, such contempt of its

authority, and none other, as . . . (3) Disobedience or

resistance to its lawful writ, process, order, rule, decree, or

command."

The Government subsequently filed a motion for an

Order to Show Cause why Juror Number One should not be held in

contempt of this Court for failing to obey its orders of June 2,

2011, and June 7, 2011. Gov't's Mot. for Order to Show Cause,

ECF No. 103.

---

[3] The jury went on to complete the trial, engage in
deliberations, and reach a verdict. The results of the trial are
not at issue in this case.

## III. WHETHER JUROR NUMBER ONE'S ACTIONS EVINCE JUROR MISCONDUCT

Generally, contempt means disregard for, or disobedience of, the orders or commands of a public authority either legislative or judicial. A federal court has the power to punish contemnors by fine or imprisonment "at its discretion." 18 U.S.C. § 401; Michaelson v. United States ex rel. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 266 U.S. 42, 65 (1924) ("That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law."). This authority extends over jurors who disobey a court's orders. See, e.g., United States v. Hand, 863 F.2d 1100, 1101 (3d Cir. 1988) (affirming district court's judgment that a juror guilty of impermissible contact with a defendant was required to pay restitution to the government for the cost of prosecuting the trial). Based on Juror Number One's conduct, the Court found that contempt proceedings were appropriate to evaluate whether Juror Number One had violated the Court's orders. The Government's petition and the Court's order to show cause provided Juror Number One with the essential facts underlying its request for contempt sanctions.[4] See Gov't's Mot.

---

[4] The order to show cause provides Juror Number One with notice of the time and place of the hearing, and the Court scheduled a hearing a month after the order, which is a reasonable time to prepare a defense. See United States v. United Mine Workers of

for Order to Show Cause, ECF No. 103; Order, Sept. 23, 2011, ECF
No. 105.


A.    Criminal Versus Civil Contempt

        The appropriateness of either of two types of
contempt, civil or criminal, depends upon the court's reason for
initiating contempt proceedings. Taberer v. Armstrong World
Indus., Inc., 954 F.2d 888, 896-97 (3d Cir. 1992) (citing
Shillitani v. United States, 384 U.S. 364, 371 (1966)). "The
dichotomy between criminal and civil contempt lies in the
function of the order." McDonald's Corp. v. Victory Inves., 727
F.2d 82, 86 (3d Cir. 1984). Civil contempt sanctions are
remedial in nature and are designed to coerce compliance with a
court order or to compensate the injured party. See Roe v.
Operation Rescue, 919 F.2d 857, 868-69 (3d Cir. 1990); Latrobe
Steel Co. v. United Steelworkers of Am., 545 F.2d 1336, 1343 (3d
Cir. 1976). As a result, a civil contemnor can purge the
contempt if he performs the affirmative act required by the
court's order. By contrast, criminal contempt is a punitive
sanction, designed to vindicate the court's authority by
punishing past acts of disobedience and therefore cannot be

_____

Am., 330 U.S. 258, 296 (1947) (stating that an order to show
cause can serve notice function of Rule 42(b)).

7

cured by the contemnor. Hicks ex. rel. Feiock v. Feiock, 485
U.S. 624, 631-32 (1988).

The two types of contempt also have different burdens
of proof and relations to the underlying proceeding. Civil
contempt must be proved by "clear and convincing" evidence,
while criminal contempt must be proved beyond a reasonable
doubt. United States v. Pozsgai, 999 F.2d 719, 735 (3d Cir.
1993); see also Hicks, 485 U.S. at 632; Quinter v. Volkswagon of
Am., 676 F.2d 969, 974 (3d Cir. 1982). Although civil contempt
proceedings are ordinarily a part of the underlying action,
criminal contempt proceedings are "separate from the actions
which spawned them." Latrobe Steel Co., 545 F.2d at 1343.

It is a criminal non-summary contempt proceeding that
is most appropriate here, as the Court is not compelling
compliance but instead is punishing for past behaviors, and the
judge neither saw nor heard the contemptuous conduct. See Fed.
R. Crim. P. 42(a) ("[T]he court (other than a magistrate judge)
may summarily punish a person who commits criminal contempt in
its presence if the judge saw or heard the contemptuous conduct
and so certifies."); Taberer, 954 F.2d at 896-97 (finding that
the [Supreme] Court's admonition in Shillitani that courts must
first resort to civil contempt sanctions "was intended to apply
only when a judge initiates contempt proceedings for the purpose

of coercing compliance with a court order, and not when the court's purpose is to punish past violations of its orders"). As the sanctions would be criminal in nature, Juror Number One is entitled to all constitutional rights provided to criminal defendants. United States v. Dixon, 509 U.S. 688, 696 (1993) (holding that constitutional protections for criminal defendants other than the double jeopardy provision apply in non-summary criminal contempt prosecutions just as they do in other criminal prosecutions) (citing Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 444 (1911) (listing presumption of innocence, proof beyond a reasonable doubt, and guarantee against self-incrimination)); Cooke v. United States, 267 U.S. 517, 537 (1925) (listing notice of charges, assistance of counsel, and right to present a defense); In re Oliver, 333 U.S. 257, 278 (1948) (listing the right to a public trial as a protection that must be provided in criminal contempt proceedings); see also Hicks, 485 U.S. at 632 ("[C]riminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings."). All of the constitutional protections required with respect to this criminal contempt proceeding have been duly afforded to Juror Number One in this case.

B.    Criminal Contempt Process

Federal Rule of Criminal Procedure 42 governs criminal contempt proceedings. Rule 42(a) requires that notice and a hearing be given in every case where the contempt may not be summarily punished. Specifically it provides that "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice." Fed. R. Crim. P. 42(a). That notice must be provided by the court in open court, in an order to show cause, or in an arrest order. Id. The notice must also "state the time and place of the trial; allow the defendant a reasonable time to prepare a defense; and state the essential facts constituting the charged criminal contempt and describe it as such."[5] Id.

_____

[5] The order to show cause in this case did not specify that the hearing was for criminal contempt. Order, Sept. 23, 2011, ECF No. 105. The Supreme Court has held a district court's failure to label a contempt proceeding as criminal in the hearing notice is grounds for reversal only when the failure causes "substantial prejudice" to the defendant resulting from his lack of awareness that the proceeding is criminal. United Mine Workers of Am., 330 U.S. at 297-98. Here, the Government's petition alleged a willful violation of the Court's orders with respect to Juror Number One's conduct, and both the petition and the rule to show cause inquired as to why Juror Number One should not be held in "contempt of this Court for refusing to obey its Orders." The omission of the words "criminal contempt" in this case is not prejudicial error. First, the Court in compliance with Rule 42(a) requested that the contempt be prosecuted by an attorney for the Government and in that order explained that a criminal contempt charge was being pursued. ECF No. 90. Second, the Court stated on the record during a hearing on September 8, 2011, that the only proper contempt proceedings

Congress has determined that under certain circumstances criminal contempt constitutes a federal crime. <u>See</u> 18 U.S.C. § 401. Section 401 reads in relevant part: "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." While Section 401 limits the Court's power to punish contempt summarily, it is not an exhaustive definition of the conduct that courts may punish as contempt. <u>Taberer</u>, 954 F.2d at 900. The Third Circuit has reasoned that:

> The power to define what does and does not constitute contempt is an attribute that inheres in the contempt power. If Congress can exhaustively define the conduct that courts may punish as contempt, then the court's ability to vindicate its authority is completely dependent upon Congress, in violation of the principle that the contempt power "is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." <u>Young v. United States ex. rel. Vuitton et Fils S.A.</u>, 481 U.S. 787, 796 (1987).

<u>Id.</u> Nonetheless, the imposition of all criminal contempt sanctions is restricted to "those instances where the court must

for this case were criminal in nature. Lastly, the Government's petition explains that the contempt proceedings are governed by Rule 42(a), which only governs criminal contempt proceedings. The purpose of Rule 42(a), namely to ensure that contemnors realize that a prosecution for criminal contempt is contemplated, was sufficiently fulfilled here. <u>See</u> <u>United Mine Workers of Am.</u>, 330 U.S. at 297-98.

vindicate its authority." <u>Waste Conversion, Inc. v. Rollins</u>
<u>Envtl. Servs.</u>, 893 F.2d 605, 612 (3d Cir. 1990).

In construing section 401(3), the Supreme Court stated
that, "[W]e find no case suggesting that subdivision (3) of §
401, before us here, is open to any but its obvious meaning."
<u>Green v. United States</u>, 356 U.S. 165, 172 (1958). Thus, to
sustain a conviction under subsection (3), the government must
prove that the alleged contemnor willfully disobeyed an order by
the court beyond a reasonable doubt. The mere failure to comply
with a court's order, without more, is not sufficient to sustain
a conviction for contempt because "the crime of criminal
contempt requires a specific intent to consciously disregard an
order of the court." <u>Waste Conversion</u>, 893 F.2d at 610. The
willfulness element of the offense requires proof of "a
volitional act done by one who knows or should reasonably be
aware that his conduct is wrongful." <u>United States v. Greyhound</u>
<u>Corp.</u>, 508 F.2d 529, 531-32 (7th Cir. 1974). Moreover, the Third
Circuit has adopted the following defense against the element of
willfulness from the Seventh and D.C. Circuits:

> Willfulness for the purpose of criminal contempt does
> not exist where there is a "[g]ood faith pursuit of a
> plausible though mistaken alternative." To provide a
> defense to criminal contempt, the mistaken
> construction must be one which was adopted in good

faith and which, given the background and purpose of
the order, is plausible.

Greyhound Corp., 508 F.2d at 532 (quoting In re Brown, 454 F.2d
999, 1007 (D.C. Cir. 1971)).

In this case, Juror Number One's misconduct is based
on her failure to obey two separate court orders directing her
not to discuss the case with anyone else until the case was
complete. See Trial Tr. 5:23-7:12, June 2, 2011; Trial Tr.
270:7-16, June 7, 2011. On June 2, 2011, the Court specifically
mentioned the use of cellular telephones, the Internet, and
electronic messaging as avenues to be avoided in communicating
about the case to anyone else. On June 7, 2011, after dismissing
Juror Number One, the Court again admonished her that the case
was not completed, that she should not discuss the case with
anyone else until it was completed, and that she would be
notified when the case was completed. Despite these orders,
Juror Number One reached out via e-mail to two jurors who were
still on the panel and even began a dialogue with one of them
concerning the case. The e-mails specifically discussed Juror
Number One's emotional disquietude about being dismissed at such
a late stage of the proceedings and contained her opinion that
the Defendant was guilty of all of the charges. The clear
language of both orders prohibiting any type of discussion via

any medium until the conclusion of the case does not permit much leeway for plausible though mistaken understandings of the orders.

Under these circumstances, the Court finds beyond a reasonable doubt that Juror Number One did willfully disobey the Court's orders and did not in good faith pursue a "plausible, though mistaken alternative." Due to the early detection of Juror Number One's misconduct, the integrity of the trial was preserved; however, her actions could have damaged the trial process, prejudiced the defendant, and/or resulted in a mistrial, all of which would have inflicted additional costs and burdens on the parties and the judicial system generally. Accordingly, the Court finds that under the current facts, there is sufficient evidence that Juror Number One is guilty beyond reasonable doubt of criminal contempt pursuant to subsection (3) of 18 U.S.C. § 401.

C.    Sentencing

The Court has the inherent power and discretion to impose a penalty for contempt reasonably commensurate with the gravity of the offense. Section 401(3) provides that a federal

court "shall have power to punish by fine or imprisonment,[6] at its discretion," a contempt arising from the disobedience of a lawful order of the court. As the statutory language is in the disjunctive, the district court has discretion to impose a fine or imprisonment, but not both. See United States v. Versaglio, 85 F.3d 943, 947 (2d Cir. 1996) (holding that section 401's prohibition against both a fine and imprisonment has not been superseded by the Sentencing Reform Act of 1984); United States v. Hawkins, 76 F.3d 545, 550 (4th Cir. 1996) (same); United States v. Holloway, 991 F.2d 370, 373 (7th Cir. 1993) (same); United States v. White, 980 F.2d 1400, 1401 (11th Cir. 1993) (same).[7] In the present case, as the Court found Juror Number One guilty of criminal contempt, the Court can either fine Juror Number One, or sentence her to a term of imprisonment not to exceed six months.[8]

---

[6] The sentence can also consist of probation with a discretionary condition of community service. 18 U.S.C. §§ 3561, 3563(b)(12) (2006).

[7] The Third Circuit has not ruled on this issue since the Sentencing Reform Act of 1984 ("SRA") was passed. Before the SRA was passed, it was clear that a defendant convicted of criminal contempt could not be sentenced to both a fine and imprisonment under section 401. United States v. Restor, 679 F.2d 338, 339-40 (3d Cir. 1982).

[8] The Supreme Court has held that where no legislative penalty is specified and the sentence is left to the discretion of the judge, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense. Frank

The maximum sentence that can be imposed is that
provided for by Congress in the United States Code. <u>United
States v. Booker</u>, 543 U.S. 220, 259 (2005). Title 18 U.S.C. §
401 specifies neither a minimum nor maximum penalty for its
violation, nor does it assign a felony or misdemeanor
designation or grade.[9] As the offense in the case occurred after

_____

<u>v. United States</u>, 395 U.S. 147, 149 (1969). A defendant has a
Sixth Amendment right to a jury trial before being sentenced to
a prison term of more than six months for criminal contempt.
<u>Codispoti v. Pennsylvania</u>, 418 U.S. 506, 512, 516-17 (1974); <u>see
also</u> <u>Bloom v. Illinois</u>, 391 U.S. 194, 198-200 (1968) (holding
that defendant has the right to trial by jury before conviction
of contempt punishable by severe punishment); <u>United States v.
Twentieth Century Fox Film Corp.</u>, 882 F.2d 656, 662 & n.4 (2d
Cir. 1989) (noting in dicta that a defendant has the right to a
jury trial whenever the penalty imposed is greater than six
months); <u>United States v. Gedraitis</u>, 690 F.2d 351, 354-355 (3d
Cir. 1982) (finding that when an actual sentence is no more than
six months in prison plus normal periods of probation, contempt
is treated as a petty offense). Thus, a criminal contempt charge
carrying a sentence of more than six months is a serious crime
entitling a defendant to a jury trial, and one carrying a
sentence of six months or less is a petty offense. As the
hearing for the order to show cause was not heard by a jury, the
Court can only impose a term of imprisonment of six months or
less if it chooses to impose a penalty of imprisonment instead
of a fine.

[9] For violations of 18 U.S.C. § 401, the statutory table refers
the court to U.S. Sentencing Guidelines Manual § 2J1.1, but that
section simply directs the court to "Apply § 2X5.1 (Other
Offenses)." U.S. Sentencing Guidelines Manual § 2X5.1 provides
little additional guidance:

       If the offense is a felony for which no guideline
       expressly has been promulgated, apply the most
       analogous guideline. If there is not a sufficiently
       analogous guideline, the provisions of 18 U.S.C. §
       3553 shall control, except that any guidelines and

the Sentencing Guidelines were promulgated pursuant to the SRA,

the Court ordinarily takes into account the advice of the

Sentencing Guidelines and bases Juror Number One's sentence on

the factors set forth in 18 U.S.C. § 3553.

While courts have struggled with the appropriate

method to discern whether criminal contempt appropriately falls

within either the felony or misdemeanor classification pursuant

to the Sentencing Guidelines,[10] since the imprisonment penalty in

---

policy statements that can be applied meaningfully in
the absence of a Chapter Two offense guideline shall
remain applicable.

Application Note 1 to U.S. Sentencing Guidelines Manual § 2J1.1
explains why the Sentencing Commission felt it necessary to
allow sentencing judges complete discretion in finding an
applicable guideline:

Because misconduct constituting contempt varies
significantly and the nature of the contemptuous
conduct, the circumstances under which the contempt
was committed, the effect the misconduct had on the
administration of justice, and the need to vindicate
the authority of the court are highly context-
dependent, the Commission has not provided a specific
guideline for this offense. In certain cases, the
offense conduct will be sufficiently analogous to §
2J1.2 (Obstruction of Justice) for that guideline to
apply.

[10] Absent from the text of § 401 is a maximum sentence for
punishing a contemnor. See Frank v. United States, 395 U.S. 147,
149 (1969) (noting Congress placed no statutory maximum that
might limit a court's ability to mete out an appropriate
punishment for contempt). Title 18 U.S.C. § 3559, which
classifies offenses according to letter grades, states that
"[a]n offense that is not specifically classified by a letter

grade in the section defining it, is classified . . . [according to] the maximum term of imprisonment authorized."

Courts have reasoned that because a maximum penalty is not specified in § 401, a violation of the statute is punishable by life imprisonment, which statutorily classifies all contumacious crimes as Class A felonies. See United States v. Mallory, 525 F. Supp. 2d 1316, 1320 (S.D. Fla. 2007), rev'd sub nom. United States v. Cohn, 586 F.3d 844 (11th Cir. 2009) (rejecting a literal reading of the classification statute requiring all criminal contempts to be classified as Class A felonies); United States v. Carpenter, 91 F.3d 1282, 1284 (9th Cir. 1996) (rejecting district court's contention that all criminal contempts should be treated as Class A felonies because criminal contempts include "a broad range of conduct, from trivial to severe").

The only two Circuits to have addressed the appropriate classification of criminal contempts have both rejected such a literal reading of the classification statute. The Ninth Circuit in United States v. Carpenter explained that "[i]t would be unreasonable to conclude that by authorizing an open-ended range of punishments to enable courts to address even the most egregious contempts appropriately, Congress meant to brand all contempts as serious and all contemnors as felons." 91 F.3d 1282, 1284 (9th Cir. 1996). Therefore, "criminal contempt should be classified for sentencing purposes according to the applicable Guidelines range for the most nearly analogous offense." Id. at 1285. The Ninth Circuit amended this method in United States v. Broussard, in holding that while the severity of contempt violations for purposes of 18 U.S.C. § 3559(a) continues to turn on the most analogous underlying offense, judges are no longer limited to the maximum guidelines sentence for that offense, but instead "upper limit of the district judge's discretion" is the statutory maximum for that offense. 611 F.3d 1069, 1072 (9th Cir. 2010).

The Eleventh Circuit in United States v. Cohn declined to adopt the Ninth Circuit's method of classification because it did not address how to classify criminal contempt if a sufficiently analogous guideline is absent. 586 F.3d 844, 847 n.7 (2009). Specifically, the Court held that "criminal contempt is an offense sui generis that cannot be classified pursuant to § 3559." Id. at 849.

this case is capped at six months, this Court needs not

determine this issue. Moreover, as the highest sentence the

Court can impose for this offense would be a Class B or C

misdemeanor or infraction,[11] the Sentencing Guidelines do not

apply to the offense at hand. See U.S. Sentencing Guidelines

Manual § 1B1.9.

Since the Guidelines do not provide any specific

guidance under the circumstances, in imposing the appropriate

sentence, the Court will take into account the factors in §

3553(a) and impose a sentence "sufficient, but not greater than

necessary," to comply with the elements in § 3553(a)(2). The

factors under § 3553(a) relevant to this case and brought to

this Court's attention include, the nature and circumstances of

the offense and the history and characteristics of the

---

The Third Circuit has not addressed this issue and this
Court does not have a reason to address the issue as the term of
imprisonment allowed pursuant to the Sixth Amendment could only
appropriately fall under the classifications for misdemeanors.
See 18 U.S.C. § 3559 (2006).

[11] A Class B misdemeanor is any offense for which the maximum
authorized term of imprisonment is more than thirty days but not
more than six months; a Class C misdemeanor is any offense for
which the maximum authorized term of imprisonment is more than
five days but not more than thirty days; an infraction is any
offense for which the maximum authorized term of imprisonment is
not more than five days or for which no imprisonment is
authorized. See 18 U.S.C. § 3559 (2006).

defendant,[12] and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford general adequate deterrence to criminal conduct of the kind at issue.[13]

As the Third Circuit Court of Appeals has recognized, the widespread availability of the Internet and the extensive use of social networking sites, such as Twitter and Facebook, have exponentially increased the risk of prejudicial communication amongst jurors and opportunities to exercise persuasion and influence upon jurors. United States v. Fumo, 655 F.3d 288, 305 (3d Cir. 2011). Jurors are not supposed to discuss with anyone the cases they hear before deliberation or outside the jury deliberation room so as to avoid improper influences and to ensure that a jury's verdict will be just and fair. While jurors improperly commenting on cases perhaps are not unprecedented occurrences, the Internet and social networking sites, and in this case e-mail, "have simply made it quicker and easier to engage more privately in juror misconduct, compromise the secrecy of their deliberations, and abase the sanctity of

---

[12] 18 U.S.C. § 3553(a)(1) (2006).

[13] 18 U.S.C. § 3553(a)(2)(A),(B) (2006).

the decision-making process." Id. at 332 (Nygaard, J., concurring in part, dissenting in part).[14]

_____

[14] While the majority opinion in Fumo did recognize the perils of these new technologies, the concern was expounded upon further by Judge Nygaard. He noted that in a large number of both criminal and civil cases, jurors have used social mediums to improperly discuss their service or conduct independent research. His examples included the following:

> In an Arkansas state court, a defendant attempted to overturn a $12.6 million verdict because a juror used Twitter to send updates during the trial. One post stated "Oh, and nobody buy Stoam. It's bad mojo and they'll probably cease to exist now that their wallet is 12m lighter." See Renee Loth, Mistrial by Google, Boston Globe, Nov. 6, 2009, at A15, available at http://www.boston.com/bostonglobe/editorial_opinion/ oped/articles/2009/11/06/mistrial_by_google (last visited Aug. 1, 2011).

> In Maryland, Baltimore Mayor Sheila Dixon sought a mistrial in her embezzlement trial because, while the trial was going on, five of the jurors became "Facebook friends" and chatted on the social networking site, despite the Judge's instructions not to communicate with each other outside of the jury room. Dixon's attorneys argued that these "Facebook friends" became a clique that altered the jury dynamic. Brendan Kearny, Despite Judge's Warning, Dixon Jurors Went on Facebook, The Daily Record, Dec. 2, 2009, http:// mddailyrecord.com/2009/12/02/despite-judge%rs-warning-dixon-jurors-went-on-facebook (last visited August 1, 2011).

> In the United Kingdom, a case was thrown out because a juror sitting on a criminal matter wrote on her Facebook page that she was uncertain of the defendant's guilt or innocence and created a poll for her friends to vote. Urmee Khan, Juror Dismissed From a Trial After Using Facebook to Help Make a Decision, Telegraph.co.uk, Nov. 24, 2008, http://www. telegraph.co.uk/news/newstopics/lawreports/3510926/ Juror-dismissed-from-a-trial-after-using-Facebook-to-

Courts must continually adapt to the potential effects of emerging technologies on the integrity of the trial and must be vigilant in anticipating and deterring jurors' continued use of these mediums during their service to the judicial system.[15] A necessary consequence of this adaptation is the enforcement of a Court's admonitions against commenting—even obliquely—about a trial on social networking websites and through other internet mediums. Unless curtailed, this inappropriate conduct can have an enormous impact on the justice system.[16] Holding jurors in

help-make-a-decision.html (last visited August 1, 2011).

Fumo, 655 F.3d at 332. These cases are not unique and there is reason to surmise that these violations are occurring more frequently than courts are able to detect.

[15] An example of anticipatory measures against juror misconduct occurred in a federal case against a former Soviet military officer facing arms charges. Specifically, Judge Shira Scheindlin required jurors to sign a pledge not to research the case on the Internet. See NY Judge: No Web for Jurors at Soviet Arms Trial, CBS News (Oct. 5, 2011 11:01 PM), http://www.cbsnews.com/stories/2011/10/05/ap/business/main201164 12.shtml.

[16] The Arkansas Supreme Court recently reversed an Appellant's conviction and death sentence due to juror misconduct which occurred during the course of a trial and the failure of the trial judge to declare a mistrial or replace the juror with an alternate. Dimas-Martinez v. Arkansas, No. CR 2007-94-2-A, 2011 WL 6091330, at *11-15 (Ark. Dec. 8, 2011). During the course of the trial, the juror tweeted about the proceedings and even after the juror was questioned, admitted to the misconduct, and was again admonished not to discuss the case in Internet forums, he continued to tweet, specifically during jury deliberations. Id. at *14-15.

contempt due to Internet misconduct vindicates the court's authority by punishing past acts of disobedience and conveys "a public message that the judicial system cannot tolerate such behavior." Id.

In addition, the Court acknowledges that Juror Number One has lived an exemplary life, both personally and professionally, and has devoted twenty-six years to public service, rising in the ranks of a respected government agency.

The Court has also considered alternative sentences of imprisonment or probation with community service, which it has found not to be appropriate under the circumstances of this case.

In consideration of all of these factors, the Court imposes a sentence of a fine of $1,000, which serves to vindicate the authority of the Court and to punish Juror Number One for her improper conduct. The Court believes that the sentence imposed is sufficient, but not greater than necessary to reflect the serious nature of the offense, to afford adequate general deterrence, and to provide just punishment for the offense.

**IV. CONCLUSION**

Based on the aforementioned, the Court finds that Juror Number One is guilty beyond a reasonable doubt of criminal contempt for juror misconduct and sentences her to a $1,000 fine. An appropriate order shall follow.